| | |
|---|---|
| MARTINEZ GROCERY II, et al.<br><br>        Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.<br><br>        Defendants. | HONORABLE NOEL L. HILLMAN<br><br>Civil Action<br>No. 18-0627 (NLH/KMW)<br><br>**OPINION** |

APPEARANCES:

Brian E. Turner, Esq.
15 West Park Avenue
Merchantville, New Jersey 08109
    Attorney for Plaintiffs

Craig Carpenito, United States Attorney
By: John Tudor Stinson, Jr., Assistant U.S. Attorney
402 East State Street, Room 430
Trenton, New Jersey 08608
    Attorneys for Defendants

**HILLMAN, District Judge:**

**I.    INTRODUCTION**

This matter comes before the Court by way of a motion for summary judgment filed by Defendants United States of America and the Secretary of the United States Department of Agriculture, Sonny Perdue, (hereinafter, collectively, "Defendants") seeking judgment in their favor as to all counts of the Complaint [Docket Item 1] filed by Plaintiffs Martinez

Grocery II and Juana Martinez (hereinafter, collectively, "Plaintiffs"). (See Defs.' Mot. [Docket Item 13].) The Court will grant Defendants' motion.

## II. BACKGROUND[1]

### A. The Supplemental Nutrition Assistance Program

This case revolves around the Supplemental Nutrition Assistance Program ("SNAP"), which is administered by the Food and Nutrition Service of the United States Department of Agriculture ("FNS"). 7 U.S.C. §§ 2011–2036. SNAP provides assistance to eligible households by supplementing their available funds to spend on food items. 7 U.S.C. § 2013(a). Participants use their SNAP benefits to purchase food items at authorized stores, and the United States then redeems those benefits by paying the store the full face value of the

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, unless otherwise noted, the Court distills this undisputed version of events from Defendants' Statement of Undisputed Material Facts ("Defs.' SMF") [Docket Item 13-1], Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts ("Pls.' RSMF") [Docket Item 14], 1-3, and related exhibits and documents. The Court presents this version of the record in the light most favorable to Plaintiffs, as the non-moving party. The Court will not consider Plaintiffs' Counterstatement of Undisputed Material Facts ("Pls.' CSMF") [Docket Item 14], 3-4, as it does not comply with the requirements Local Civil Rule 56.1, most notably because the vast majority of the document is used to present an excerpt of the federal regulations and because those few factual statements included in the document are also included in Defendants' Statement of Undisputed Material Facts and are responded to in Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts.

2

benefits. 7 U.S.C. §§ 2013(a), 2016(b), 2018, 2019. Participation in the program by such stores is managed by FNS and governed by the relevant statutory and regulatory regime in order to achieve SNAP's objectives, while also preventing or minimizing fraud and abuse. 7 U.S.C. § 2011.

### B. Martinez Grocery II

Martinez Grocery II is a small convenience store that opened in 1998 in Camden, New Jersey. Shortly after opening, Plaintiffs applied to participate in SNAP and were accepted into the program. As of June 2017, there were 45 SNAP-participating retailers within one mile of Martinez Grocery II of varying size and description.

On May 13, 2017, FNS conducted a site visit to Martinez Grocery II, which noted that the store did not provide customers with shopping carts or baskets, only had a single cash register, and that items for sale exhibited a typical pricing structure, wherein most prices ended with "x9" cents.[2] At the time, the

---

[2] Plaintiffs attempt to dispute this fact in their RSMF, by stating that Plaintiffs did not "provide" pricing information to the FNS reviewer who visited the store. However, the review form, (A.R. [Docket Item 12], 57), indicates that the reviewer is supposed to complete the pricing structure question and then complete the remainder of the form "in collaboration with store personnel," which the Court notes does not require Plaintiffs to "provide" any information to the FNS reviewer, but only indicates that after the pricing structure is determined, the remaining questions should be completed in consultation with store employees. Additionally, Plaintiff contends that certain items do not fit this typical pricing structure, but neither

3

most expensive items eligible for SNAP were $19.99, $11.99, and $5.99.

**C. FNS Investigation**

In June 2017, FNS began investigating Plaintiffs after their "Alert System" indicated that Plaintiffs' recent pattern of SNAP transactions indicated possible trafficking in SNAP benefits,[3] in violation of SNAP regulations. As part of the

---

Plaintiffs' RSMF nor the exhibit to which they direct the Court's attention, (Aff. of Juana Martinez [Docket Item 14-2]), indicate whether the indicated non-typical prices were the prices for these same items on May 13, 2017 or at any other time relevant to this case. Therefore, Plaintiffs do not here raise a genuine dispute of material fact.

[3] As defined by FNS regulations, trafficking in SNAP benefits means:

> (1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone;
>
> (2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;
>
> (3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and

ensuing investigation, FNS staff collected Plaintiffs' SNAP transaction records for the time-period running from December 2016 through May 2017 and analyzed it in conjunction with data from other nearby SNAP retailers, with the transaction histories of certain nearby SNAP households, and with established patterns of SNAP benefit trafficking.[4]

---

> intentionally returning the container for the deposit amount;
>
> (4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or
>
> (5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food.
>
> (6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone.

7 C.F.R. § 271.2.

[4] Plaintiffs attempt to take issue with FNS's investigation by asserting that Plaintiffs believe FNS's "Alert System" may have been malfunctioning at the time that it flagged Martinez Grocery II's transactions for further review, and that the system flagged the store in error. (Pls.' RSMF [Docket Item 14], 7 on the docket; Pls.' Opp'n [Docket Item 14], 11-12 on the docket.)

As a result of the investigation, FNS sent Plaintiffs a letter on July 27, 2017, charging Plaintiffs with SNAP benefits trafficking based on three types of suspicious activities uncovered by FNS's investigation:

1. An unusually large number of transactions ending in $.00 or $.50
2. Multiple transactions from an individual SNAP account in a short period of time
3. Numerous excessively large transactions, relative to the nature of Martinez Grocery II as a small convenience store

The July letter indicated that the default sanction for SNAP trafficking is permanent disqualification from SNAP participation, but that a retailer could request that FNS consider a civil monetary penalty instead.

**D. Administrative Proceedings**

Plaintiffs requested and were granted numerous extensions of time to respond to the July 2017 letter. On August 15, 2017, Plaintiffs responded to FNS through counsel, asserting that they had not violated any SNAP regulations. Specifically, Plaintiffs alleged that they sell many items that end in $.00 or $.50, that

---

However, while Plaintiffs take issue with the manner in which FNS's investigation was triggered, Plaintiffs do not appear to challenge the manner in which the investigation was conducted. Nor do Plaintiffs explain why an allegedly malfunctioning "Alert System" would invalidate a subsequent investigation, where the investigation itself was conducted properly. Therefore, the Court does not consider this dispute to be material to the outcome of this case.

6

all same-household transactions were hours apart, and that Plaintiffs cannot control a SNAP recipient's desire to purchase large amounts of items in a single visit to Martinez Grocery II. Plaintiffs did not request that FNS consider a civil monetary penalty in lieu of permanently disqualifying Plaintiffs from participating in SNAP. Attached to Plaintiffs' letter were a number of additional invoices, allegedly related to Martinez Grocery II's inventory.

FNS analyzed Plaintiffs' response and determined that

> [Plaintiffs'] response to [FNS's] letter of charges failed to justify or adequately explain the very suspicious transaction activity noted in [FNS's] charge letter or demonstrated by the specific household shopping activity detailed in [FNS's] case analysis. . . . A review of client shopping data for the review period shows that clients shopping at Martinez Grocery II are also shopping at other area grocery stores, as well as full-line supermarkets and superstores that offer customers a much larger quantity and variety of eligible food items. It is our conclusion that the firm's transactions more likely than not represent trafficking.

(A.R. [Docket Item 12], 341.) Specifically with respect to the invoices provided by Plaintiffs, FNS determined that

> [Plaintiffs'] reply contains invoices from Sun Wholesale Inc. dated December 1, 2016 through August 8, 2017 and a summary report of all the purchases from Sam's Club dated December 9, 2016 through July 31, 2017. [FNS's] analysis revealed that [Plaintiffs] provided invoices belonging to two different stores owned by the same retailer: Martinez Grocery II [and a second, redacted store].

7

> [. . .]
>
> With regard to the invoices [Plaintiffs] provided a total of 95 invoices, 56 of which belong to [REDACTED] (not the subject store) and 39 invoices belong to Martinez Grocery II.
>
> [. . .]
>
> These invoices and the summary report totaled $6,659.35 for food items only and including a 40% mark-up of $2,663.74 the total comes to $9,323.09. The total SNAP redemptions during the same time period equaled $21,227.84. Standard 20% per month for cash, credit, and debit card sales brings Martinez Grocery II's total potential sales for the six months to $7,458.47. . . . The store had a shortage of $13,769.37 during the six month review period. It is highly improbable that the store could support the SNAP redemptions based on its invoices.

(Id. at 339-40.)

Therefore, FNS determined that Plaintiffs had not sufficiently responded to the allegations in FNS's July letter and FNS issued a decision letter on September 19, 2017 concluding that Plaintiffs had engaged in SNAP trafficking and permanently disqualifying them from participation in SNAP

Plaintiffs officially appealed FNS's decision letter on October 2, 2017 and submitted additional materials for review on October 31, 2017. FNS determined that these additional materials did not contain any new arguments or any new evidence in relation to the trafficking allegations. FNS also noted that the number of suspicious SNAP transactions at Martinez Grocery

8

II "dropped to zero" in the month after FNS gave Plaintiffs notice of the suspected trafficking.

On December 11, 2017, FNS issued its Final Agency Decision regarding Plaintiffs' appeal, concluding that

> [FNS] determined that [Plaintiffs] likely trafficked in SNAP benefits. The charges of violations were based on [FNS's] assessment that substantial evidence exists that the questionable transactions occurring during the review period displayed patterns inconsistent with legitimate sales of eligible food to SNAP participants. The evidence [FNS] considered in support of its determination included:
>
> • The irregular SNAP transaction data of [Plaintiffs] as compared to similar stores;
> • Observations made during an store visit by a USDA contractor, including the inadequacy of the firm's staple food stock to support such large transactions;
> • The availability of other SNAP-authorized stores located close to [Plaintiffs]; and,
> • Shopping behaviors of [Plaintiffs'] customers.
>
> The transaction data and overall firm record demonstrate the patterns of unusual, irregular, and inexplicable SNAP activity for this firm is likely the result of trafficking. Upon review, [Plaintiffs] failed to prove by a preponderance of the evidence that the administrative action should be reversed. [Plaintiffs] provided inadequate explanations for the suspicious transactions and insufficient evidence to legitimize its transaction data. It has not convincingly rebutted the [FNS's] determination that [Plaintiffs] most likely trafficked in SNAP benefits. The SNAP regulations are specific with regard to the action that must be taken

9

>           if personnel of the firm have trafficked,
>           which is that FNS must disqualify the firm
>           permanently.

(A.R. [Docket Item 12], 552.)

On January 16, 2018, Plaintiffs filed the present case, seeking to overturn FNS's Final Agency Decision.

**III. STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations

are the province of the factfinder, and thus at the summary judgment stage credibility issues should be resolved against the moving party. Big Apple BMW v, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "[t]he mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**IV. DISCUSSION**

Plaintiffs' Complaint alleges two claims. (See Complaint [Docket Item 1].) Count One seeks trial de novo regarding Defendants' finding that Plaintiffs engaged in trafficking. (See id. at ¶¶ 30-36.) Count Two seeks a finding that Defendants' decision to permanently disqualify Martinez Grocery II from the SNAP program was arbitrary and capricious. (See id. at ¶¶ 37-40.)

    **A. Legal Standard**

The SNAP program provides for judicial review of any final determination by the FNS for aggrieved parties. 7 U.S.C. § 2023(a)(13). The statute states that "the suit ... shall be a

11

trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue...." 7 U.S.C. § 2023(a)(15). Courts apply a two-step analysis in such cases. "First, the [c]ourt must review whether a violation occurred. For this inquiry, the plaintiff challenging the administrative action has the burden of proving by a preponderance of the evidence that the charged SNAP violation did not occur." White Horse No. 2 v. United States, No. 11-1538, 2012 WL 1533468, at *2-3 (D.N.J. Apr. 30, 2012) (citing Han v. Food and Nutrition Service, 580 F.Supp. 1564, 1567 (D.N.J.1984) ("plaintiff bears the burden of establishing by a preponderance of the evidence that the agency's determination to disqualify [plaintiff] from participating in the Food Stamp Program is factually incorrect.")).

Regarding a plaintiff's right to trial de novo, the Third Circuit has held that "de novo review is compatible with a summary judgment disposition if there are no material facts in dispute." Freedman v. U.S. Dep't of Agric., 926 F.2d 252, 261 (3d Cir. 1991) (citing In Suk Pak v. U.S. Dep't of Agric., 690 F. Supp. 322 (M.D. Pa. 1987), aff'd, 853 F.2d 918 (3d Cir. 1988); Modica v. United States, 518 F.2d 374, 376 (5th Cir. 1975) ("[d]espite the trial de novo provision, it is clear that summary judgment is a proper means of disposing of requests ... where there are presented no genuine issues of material fact")).

If a plaintiff fails to meet its burden to show that there was no violation of the SNAP program, the court then turns to step two: determining whether the sanction imposed by FNS is appropriate. "The standard of review for the imposition of a sanction under SNAP is whether the Secretary's action was arbitrary or capricious, i.e., whether it was 'unwarranted in law or without justification in fact.'" Atl. Deli & Grocery v. United States, No. 10-4363, 2011 WL 2038758, at *5 (D.N.J. May 23, 2011) (quoting Willy's Grocery v. United States, 656 F.2d 24, 26 (2d Cir. 1981)). Therefore, the plaintiff "has the burden of introducing evidence into the record that would allow the Court to conclude that the agency's determination ... is unwarranted in law or fact." Id.

**B. Step One: SNAP Violation**

As explained, supra, the Third Circuit has determined that the statutory requirement of a trial de novo can be satisfied through a motion for summary judgment, where there are no material facts in dispute. Freedman, 926 F.2d at 261; see also Modica, 518 F.2d at 376. While Plaintiffs have attempted to raise disputes of facts relating to the "Alert System" and the pricing structure employed by Martinez Grocery II, none of these disputes are material to the Court's current analysis, because Plaintiffs have failed to establish why the functioning of the "Alert System" would call into question the results of the

ensuing investigation, nor have Plaintiffs alleged, much less established, that the evidence relating to a "$.00" and "$.50" pricing structure represents prices for items as they appeared at the time of the FNS site visit or during the six-month period investigated by FNS.  (See, supra, Notes 2 and 3.)  Therefore, the Court turns to step one of its analysis.

As also explained, supra, it is Plaintiffs' burden at step one to prove, by a preponderance of the evidence, that FNS's decision to permanently disqualify Plaintiffs from further participation in SNAP was incorrect.  Plaintiffs assert that summary judgment is premature at this stage, because they seek greater discovery related to the "Alert System" and because Plaintiffs assert that the evidence relating to a "$.00" and "$.50" pricing structure creates a genuine dispute of material fact.  (See Pls.' Opp'n [Docket Item 14], 10-13 on the docket.)

Regarding the "Alert System," Plaintiffs argue "the proper functioning of the ["Alert System"] is necessary to the FNS upholding" Plaintiffs' disqualification.  (Id. at 11 on the docket.)  Plaintiffs do not provide citation to any legal authority to support this proposition.  (See id.)  Nor do Plaintiffs explain why this must logically flow from existing legal authorities.  (See id.)  Rather, Plaintiffs assert that the results of FNS's investigation must be entirely invalidated because Plaintiffs believe they should not have been

investigated in the first place.  Plaintiffs do not allege that the investigation was triggered for a nefarious or improper reason, but only baldly allege that the "Alert System" is not trustworthy.  (See id.)  However, Plaintiffs do not explain, nor do Plaintiffs provide any legal authority to explain, why the trustworthiness of the "Alert System" is relevant to the validity of the subsequent investigation, where the procedures and methods of that subsequent investigation are not being challenged.  (See generally id.)  FNS's decision to disqualify Plaintiffs from further participation in SNAP was not based on the "Alert System" but rather on the fruits of the ensuing investigation, which showed — independently of the "Alert System" — that Plaintiffs engaged in numerous activities consistent with SNAP trafficking.

With regard to Plaintiffs' evidence regarding Martinez Grocery II's pricing structure, the Court has already explained, *supra*, why this does not create a genuine issue of material fact.  The photos do not establish that these were the prices of these items at any time that is relevant to this case, nor do the photos provide support for the proposition that the store generally has a "$.00" or "$.50" pricing structure.  They are photos of a small number of items with such a pricing structure taken at an entirely unknown date.  That cannot create a genuine issue of material fact in this case.  Plaintiffs do not claim

15

that they need additional time for discovery on this issue, nor could they, since information about Plaintiffs' pricing structure is within Plaintiffs' own control and any additional information could have been submitted in the briefing related to this motion.

Therefore, the Court finds that Plaintiffs have failed to make any argument that FNS's determination was incorrect, much less to carry their burden of proving such by a preponderance of the evidence.

**C. Step Two: Arbitrary or Capricious Sanction**

The Court next turns to step two, which requires the Court to determine whether the sanction imposed by FNS was arbitrary or capricious. Plaintiffs have the burden to show that FNS's decision to ban them from SNAP was "'unwarranted in law or without justification in fact.'" Atl. Deli & Grocery, 2011 WL 2038758, at *5 (quoting Willy's Grocery, 656 F.2d at 26).

Plaintiffs' brief does not provide any argument to support their burden with respect to step two. (See generally Pls.' Opp'n [Docket Item 12], 10-13 on the docket.) Plaintiffs' complaint alleges that FNS's sanction was arbitrary and capricious because FNS's charge and determination letters did not specifically indicate that FNS's decision was guided by the enumerated bases for such a determination as set forth at 7 C.F.R. § 278.6(d):

1. The nature and scope of the violations committed by personnel of the firm,
2. Any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and
3. Any other evidence that shows the firm's intent to violate the regulations.

(See Complaint [Docket Item 1], ¶ 38.)

However, FNS's charge letter clearly states that Martinez Grocery II has been charged with SNAP trafficking and that the mandatory sanction if such a violation is found to have occurred is disqualification from SNAP, unless Martinez Grocery II requested that FNS consider a civil monetary penalty. It is undisputed that Plaintiffs never made such a request. Unlike with other violations of SNAP rules and regulations, 7 C.F.R. § 278.6(e)(1) "mandates automatic disqualification for any trafficking offense." Grocery Town Mkt., Inc. v. United States, 848 F.2d 392, 393 (3d Cir. 1988). Therefore, FNS is not permitted to consider any mitigating circumstances, including the considerations in 7 C.F.R. § 278.6(d).

Plaintiffs further allege in their complaint that FNS's letters were so ambiguous that Plaintiffs were unable to effectively respond to the letters and were unaware of how FNS considered Plaintiffs' responses to such letters. (See Complaint [Docket Item 1], ¶ 39-40.) However, Plaintiffs have not specifically alleged now FNS's letters were deficient or what further information would have been necessary for them to

mount an effective defense to the allegations, nor have Plaintiffs taken the opportunity to explain any of these issues more fully in the briefing responding to the present motion.

FNS's initial charge letter includes attached forms listing each of the suspicious transactions that FNS identified. (See A.R. [Docket Item 12], 178-188.) Then ultimately FNS issued a 10-page Final Agency Decision explaining the basis for upholding its initial decision, which took into account the information collected by FNS during its investigation as well as the responses and attached documents submitted by Plaintiffs. (See id. at 544-553.) Plaintiffs have never specified what information was missing from these documents in order for Plaintiffs to "effectively refute" the allegations against them. Nor did Plaintiffs take the opportunity to more fully explain these issues in response to the pending motion.

Therefore, Plaintiffs have failed to meet their burden to show that FNS's actions were arbitrary or capricious. Furthermore, Plaintiffs have not even claimed that further discovery would be of assistance in meeting their burden. As such, Defendants' motion for summary judgment shall be granted in full.

**V. CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment [Docket Item 13] will be granted. An appropriate Order follows.

**September 27, 2019**　　　　　**s/ Noel L. Hillman**
Date　　　　　　　　　　　　　　NOEL L. HILLMAN
　　　　　　　　　　　　　　　　United States District Judge
At Camden, New Jersey

19